O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| FIRPO WYCOFF CARR,<br><br>               Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION et al.,<br><br>               Defendants. | Case № 2:23-cv-01813-ODW (MAAx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [64]** |

## I.   INTRODUCTION

Plaintiff Firpo Wycoff Carr brings this action against Defendants Federal Bureau of Investigation ("FBI") and the United States Department of Justice ("DOJ") for claims under *Bivens* and the Federal Tort Claims Act ("FTCA"), arising out of an incident at a Panera Bread on November 26, 2022. (Second Am. Compl. ("SAC"), ECF No. 59.[1]) Defendants now move to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). (Mot. Dismiss ("Motion" or "Mot."), ECF No 64.) For the following reasons, the Court **GRANTS** Defendants' Motion.[2]

---

[1] Carr titles this document "Complaint for Bivens Claims Under the United States Constitution and for Federal Tort Claims Act (Amended)." For clarity, the Court refers to this document as the Second Amended Complaint.

[2] The Court carefully considered the papers filed in connection with the Motion and deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78, Cal. L.R. 7-15.

## II. BACKGROUND

The following facts are taken from Carr's Second Amended Complaint. Well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, because Defendants base their Rule 12(b)(1) jurisdictional challenge entirely on Carr's allegations without submitting their own evidence, Defendants' challenge is properly characterized as a "facial" attack. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). When evaluating a facial attack, the Court accepts "the plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

Carr alleges that, since 1989, Defendants "have been heavily surveilling, stalking, and cyberstalking" him. (*See* SAC ¶ 23.) Specifically, Carr alleges that on November 26, 2022, an undercover FBI Special Agent "posed as a person experiencing homelessness" and stole certain items from Carr when he "momentarily stepped away from the table he sat at while dining at Panera Bread" (the "Panera Incident"). (*Id.*) Ultimately, Carr asserts that, "under the auspices of the Foreign Intelligence Surveillance Act of 1978" ("FISA"), the FBI and DOJ conspired with the manager of Panera Bread to steal his electronic devices, including his laptop, phone, computer tablet, headphones, and a beige satchel. (*Id.*) Carr surmises that the FBI and DOJ stole his electronic devices because they believe that he is a foreign spy for the "Communist Red Chinese," which he alleges is based on his past employment as a cyber expert with the Los Angeles Police Department and his international travels to China, the Soviet Union, and Cuba. (*Id.* ¶¶ 23, 36.)

On March 10, 2023, Carr filed this action, alleging that Defendants stole his laptop and other electronic devices. (*See* Compl., ECF No. 1.) On July 27, 2023, the Court granted Defendants' first motion to dismiss Carr's Complaint under Rule 12(b)(1) because Carr's claims were facially implausible and devoid of merit, rendering them insufficient to confer this Court with jurisdiction. (Order Grant. Mot.

Dismiss ("Order") 5–7, ECF No. 43.) The Court specifically noted Carr's failure to plausibly connect the theft to the FBI, because his allegations were "speculative, implausible, and otherwise not well-pleaded." (*Id.* at 6.)

Although the Court expressed "doubts that amendment would cure" the deficiencies identified in the Court's Order, the Court granted Carr leave to amend his Complaint. (*Id.* at 7–8.) On September 9, 2023, Carr filed his SAC,[3] which included two new bases that purportedly connect the FBI and DOJ to the Panera Incident. (*See* SAC.) Defendants now again move to dismiss Carr's SAC under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. (*See generally* Mot.)

### III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, a federal court has subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." *See* U.S. Const. art. III, § 2, cl. 1; 28 U.S. C. § 1331; *see also Kokkonen*, 511 U.S. at 377. The party attempting to invoke the court's jurisdiction bears the burden of establishing jurisdiction. *See Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

Under Rule 12(b)(1), a district court must dismiss an action if it lacks subject matter jurisdiction over the suit. Fed. R. Civ. P. 12(b)(1). However, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)); *see also Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989)

---

[3] Carr filed his First Amended Complaint on August 28, 2023, (First Am. Compl., ECF No. 53), but then filed a Second Amended Complaint to make numerous clerical corrections. The Court accepted the Second Amended Complaint as the operative pleading. (Min. Order, ECF No. 63.)

("A patently insubstantial complaint may be dismissed, for example, for want of subject-matter jurisdiction under [Rule] 12(b)(1).").

Essentially, federal courts lack subject matter jurisdiction to consider claims that are "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit as not to involve a federal controversy." *See Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1131 (9th Cir. 2012) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)); *see also Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1035 (9th Cir. 1985) ("Under the substantiality doctrine, the district court lacks subject matter jurisdiction when the question presented is too insubstantial to consider." (citing *Hagans*, 415 U.S. at 536–39)).

## IV. DISCUSSION

Defendants argue that Carr's amended allegations are insufficient to provide the Court with subject matter jurisdiction over this case. (Mot. 2–3.) Carr argues the Court should deny Defendants' Motion because he has now provided sufficient evidence connecting the FBI and DOJ to the Panera Incident. (*See* Opp'n 8, ECF No. 65.)

### A. Carr's Initial Complaint

In his initial Complaint, Carr alleged that the Court had federal question jurisdiction over this action under 28 U.S.C. § 1331. (*See* Compl. ¶¶ 4, 5.) However, in granting Defendant's first motion to dismiss, the Court found the link between Defendants and the theft of Carr's belongings to be so "implausible and devoid of merit" that Plaintiff failed to sufficiently establish a federal controversy. (Order 6.)

In his initial Complaint, Carr included the following three bases establishing that the FBI and DOJ were behind the theft of his laptop. (Compl. ¶¶ 6, 10.) First, Carr alleged that a Panera Bread manager conspired with the FBI by calling away a server that Carr had asked to watch his property while he stepped away from his table. (*Id.* ¶¶ 9, 11.) Second, Carr alleged the FBI spoofed or took control of the email of Carr's colleague, Dr. Nakayama, by including in Dr. Nakayama's email signature a "photoshopped" or "deep fake" photo attempting to portray Dr. Nakayama as a

4

Communist Chinese military official. (*Id.* ¶¶ 18–19.) Carr alleges that the reason behind this action was to implicate Carr by association. (*Id.*) Third, Carr alleged that two purported undercover FBI agents approached him at a gas station to ask for gas money. (*Id.* ¶ 37.) Carr ties this encounter to the FBI because, in return for gas money, the "agents" offered Carr jewelry for his "wife or girlfriend." (*Id.*) Carr speculates that only FBI agents would have known he had a wife or girlfriend, and that he was not a homosexual. (*Id.*)

In resolving Defendants' first motion to dismiss, the Court concluded these alleged connections between the FBI and DOJ and the theft of his electronic devices were "wholly untenable, speculative, and without merit," for they "are based on everyday occurrences with natural, obvious explanations." (Order 7.) As such, the Court found that Carr failed to allege sufficient facts that establish an actual dispute over which this Court has jurisdiction. The Court accordingly dismissed the Complaint with leave to amend. (*See id.*)

### B. Carr's Additional Amended Allegations

In his Second Amended Complaint, Carr repeats the previous allegations and adds two further reasons that connect Defendants to the Panera Incident. (*See* SAC ¶¶ 24–34, 62.)

First, Carr adds the allegation that the FBI physically stalked him on numerous occasions, including near the University of Phoenix campus in Ontario, California. (SAC ¶ 26.) Carr supports this allegation by establishing that his computer's settings displayed a Wi-Fi network titled "FBI Cyber Ops Tm 6" when he was in the vicinity. (*Id.* ¶¶ 26, 62.) However, this does not necessarily implicate the FBI and can easily be based on everyday occurrences with obvious explanations. As individuals can change their Wi-Fi network name to anything they wish, Carr's allegation that he saw a network name including "FBI" while at the University of Phoenix campus is again insufficient to logically connect the FBI to the theft of Carr's electronic devices at Panera Bread on November 26, 2022.

Next, Carr alleges that the statements of Panera Bread's general manager, Panera Bread's legal department, and Magistrate Judge Maria Audero regarding an alleged FISA warrant "directly connect the theft of [Carr's] belongings [to] the FBI as the thieves." (SAC ¶¶ 33–34; Opp'n 6, 9.) He attempts to support this connection with several allegations. Carr suspects the FBI had shared warrant documentation with Panera Bread before an alleged Special Agent (the one who "posed as a person experiencing homelessness") stole Carr's property on November 26, 2022. (*Id.*) Carr alleges that Panera Bread's general manager, "whom Plaintiff had never met, seemed to have full knowledge of the FBI-Panera Bread connection." (SAC ¶ 32.) Carr fails, however, to provide any facts supporting that the general manager had any such knowledge. (*See id.*) Carr claims that in response to his request for documentation, Panera Bread failed to produce certain documents, thereby helping to prove that the company colluded with the FBI and DOJ to carry out the theft. (SAC ¶¶ 33–34; Opp'n 6, 9.) Carr further argues Panera Bread acted nefariously and in bad faith by misleading Magistrate Judge Audero regarding the handing over of "the documents" to be provided to him via subpoena. (*Id.*)

Carr further argues that the statements by Panera Bread's general manager—that he would make Carr a copy of "all company correspondents and documentation related to this matter"—is akin to a "confess[ion] to possessing FISA warrant documentation received from the FBI." (SAC ¶ 33.) According to Carr, these statements establish that Panera was given a warrant under FISA, and thereby colluded with the FBI and DOJ. These allegations are entirely meritless. This statement merely indicates Carr requested information from Panera Bread via subpoena. Carr assumes, without factual support, that the information Panera will provide in response to the subpoena is the suspected FISA warrant itself. The Panera manager's statements and Judge Audero's comments mentioning "the documents" are also insufficient and vague. (*See id.* ¶¶ 33–34.) Carr fails to establish that a FISA warrant even exists, let alone that Panera Bread or Judge

Audero had knowledge of such a warrant. Therefore, again, these allegations fail to link the FBI and DOJ to the theft of Carr's electronic devices on November 26, 2022.

In conclusion, the Court finds Carr's new purported examples of FBI and DOJ conduct are again "insubstantial, implausible, [and] or otherwise completely devoid of merit as not to involve a federal controversy." *Cook Inlet Region, Inc.*, 690 F.3d at 1131 (quoting *Steel Co.*, 523 U.S. at 89). Thus, Carr fails to provide the Court with a basis for exercising subject matter jurisdiction.

Courts have generally dismissed similar outlandish instances and explanations of a federal agency's alleged harassment. *See Eide v. U.S. Dep't of Just.*, No. 5:21-cv-02005-SPG (JCx), 2022 WL 13701935, at *4 (C.D. Cal. Aug. 12, 2022), *report and recommendation adopted,* No. 5:21-cv-02005-SPG (JCx), 2022 WL 13800510 (C.D. Cal. Oct. 20, 2022) (finding plaintiff's allegations that the DOJ "wiretapped his phones, hacked his computer and Sirius satellite signal, sent independent contractors and agents to harass him at a church, a ski resort, a gym, and a dental office, ordered a pharmacist not to refill a prescription, and paid two dentists to wrongly insist plaintiff needs root canals" are "'wholly insubstantial and frivolous' and provide no basis for . . . [exercising] subject matter jurisdiction" (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251,1255 (9th Cir. 1997)); *see also Kolev v. Davidi*, No. 2:08-cv-05324-DOC (RCx), 2008 WL 4447561, at *2 (C.D. Cal. Sept. 29, 2008) ("[F]ederal courts have repeatedly dismissed claims brought by citizens who suspect federal agencies have engaged in unlawful surveillance or wiretapping activities based upon nothing but a personal belief as fantastic or delusional." (citations and internal quotation marks omitted)); *Gonzalez v. City of Fresno*, No. 1:11-cv-01458 AWI, 2012 WL 174959, at *3 (E.D. Cal. 2012) ("Plaintiff's allegations that the [defendants] are a[] part of a criminal conspiracy related to stalking, phone surveillance, and computer hacking is the type of frivolous claim that is subject to dismissal for lack of jurisdiction."). The Court finds that the courts' analyses in these cases apply to this case and render the same conclusion reasonable.

## V.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF No. 64.) Because the Court has previously granted Carr leave to amend his Complaint, and such amendment was unsuccessful, the Court **DISMISSES** Carr's Second Amended Complaint **WITHOUT LEAVE TO AMEND**. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

March 26, 2024

_____

**OTIS D. WRIGHT, II**

**UNITED STATES DISTRICT JUDGE**